UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT KING,

    Plaintiff,

v.                                        Case No. 13-10567

WADE McCREE and
GENIENE La'SHAY MOTT,           HON. AVERN COHN

    Defendants.
_____/

**MEMORANDUM AND ORDER GRANTING DEFENDANT
WADE McCREE'S MOTION TO DISMISS COMPLAINT (Doc. 15)[1]**

**I. INTRODUCTION**

In this 42 U.S.C. §§ 1983 and 1985 case, Plaintiff Robert King (King) claims that his child's mother, Geniene La'Shay Mott (Mott), and Wayne County Circuit Court Judge Wade McCree (McCree) conspired to deprive King of his Fifth and Fourteenth Amendment due process rights while he was a defendant in a child support matter on McCree's docket. King says that during this time, Mott and McCree were carrying on a secret sexual relationship. The complaint is in two counts:

    Count I       Fourteenth Amendment Due Process – § 1983 (McCree); and

    Count II      Conspiracy to Violate Fourteenth and Fifth Amendment Rights – §§ 1983, 1985 (McCree and Mott).

---

[1] Although originally scheduled for hearing, upon review of the papers, the Court deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

Now before the Court is McCree's motion to dismiss the complaint based on judicial immunity. The motion is GRANTED. The reasons follow.

## II. BACKGROUND

The factual allegations in King's complaint (Doc. 1) are accepted as true for purposes of McCree's motion to dismiss and are summarized below. *See Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 923 (6th Cir. 2013) (citing *Handy–Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 535 (6th Cir. 2012) ("Because we are reviewing the district court's order of dismissal under Fed. R. Civ. P. 12(b)(6), we must accept as true the facts set out in the complaint.")).

King and Mott are the biological parents of a six-year-old child. Mott has sole custody of the child; King is required to make child support payments to Mott.

After neglecting to make multiple child support payments over a period of years, the State of Michigan brought a criminal felony non-support case against King in the Wayne County Circuit Court. The case, *People of the State of Michigan v. Robert King*, No. 12-3141, was randomly assigned to McCree's docket.

On May 21, 2012, King appeared before McCree for a pretrial hearing. The complaining witness, Mott, was also present in the courtroom. A transcript of the hearing shows that King pleaded guilty to failure to pay child support. In exchange, King was placed on a "delayed sentence" under Mich. Comp. Laws § 771.1(2). The delayed sentence required King to pay $280.50 per month for current support and $50.00 per month for arrears until April of 2013. If King complied with the payment schedule until April of 2013, he would be eligible to withdraw his plea and have the case dismissed.

Beginning at the May 21 hearing, McCree started an improper relationship with Mott. King's complaint says:

> 21. Defendant McCree noted on the record that he was aware of Defendant Mott's presence in the courtroom throughout the morning.
>
> 22. Acting on his sexual impulse and desire, Defendant McCree began to flirt with Mott and Mott, for her own purposes, reciprocated by flirting with McCree.
>
> 23. Alone in the courtroom, following the hearing, Defendants spoke with each other ex parte and soon thereafter began a sexual relationship.
>
> 24. Over the months that followed, Defendants' sexual relationship rapidly intensified.
>
> 25. Among other things, Defendants' illicit relationship involved outings and sexual trysts in various locations including Defendant McCree's judicial chambers.
>
> 26. During these secret sexual liaisons, and at other times, Defendants discussed how to pressure and obtain larger and more immediate child support payments from Plaintiff at an upcoming child support review hearing, including incarcerating and tethering Plaintiff until he paid the money demanded by Mott.

(Doc. 1 at 4, Pl.'s Compl. ¶¶ 21–26).

On August 16, 2012, King appeared before McCree for a case review hearing. At this time, King was not in compliance with the delayed sentence agreement. The complaint says that, between the May 21 and August 16 hearings, King was $672.00 short of the total required payments. The complaint goes on to say that, acting on his "prurient whims and desires for sexual gratification," McCree ordered that King be placed on a tether until getting caught up with the child support payments.

The Register of Actions in King's case indicates that the tether was removed four days later on August 20, 2012.

King's case was transferred to another Wayne County Circuit Court judge on September 18, 2012.

### III. STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a complaint. To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545, 548 (6th Cir. 2007). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 678 (internal quotation marks and citation omitted).

## IV. DISCUSSION

McCree says he is entitled to absolute judicial immunity from a § 1983 suit arising out of his judicial actions. McCree also contends that King fails to state a claim of conspiracy under § 1985. He is correct.

### A. Fourteenth Amendment Due Process – § 1983 (Count I)

In Count I, King seeks to impose liability on McCree for a violation of his due process rights under the Fourteenth Amendment. King fails to state a claim upon which relief can be granted because McCree is entitled to absolute immunity for his judicial actions.

#### 1. The Law

The Supreme Court has long recognized that, "[a]lthough unfairness and injustice to a litigant may result on occasion," a "judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Mireles v. Waco*, 502 U.S. 9, 10 (1991) (quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1872) (internal quotation mark omitted)). To carry out their judicial actions without fear of personal consequences, judges are entitled to absolute judicial immunity from § 1983 civil suits. *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997).

Absolute judicial immunity can only be overcome in two circumstances. First, "a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity." *Mireles*, 502 U.S. at 11 (citing *Forrester v. White*, 484 U.S. 219, 227–29 (1988); *Stump v. Sparkman*, 435 U.S. 349, 360 (1978)). Second, "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 12 (citations omitted).

**2. McCree is Absolutely Immune**

King says that McCree is not entitled to absolute judicial immunity for his actions. King contends that McCree allowed Mott to dictate how to pressure King into making higher and more immediate child support payments, which included placing King on a tether. King does not dispute that McCree had jurisdiction to place him on a tether and order him to make child support payments. Instead, King argues that the actions taken by McCree were not judicial actions. The Court therefore limits its analysis in determining whether McCree's acts were judicial acts.

King explains McCree's purported nonjudicial actions in his response brief:

> It was not a judicial act to flirt with Ms. Mott from the bench when he first saw her on May 21, 2012. It was not a judicial act to pursue her in the courtroom. It was not a judicial act to engage in *ex parte* contact and give her his judicial business card with instructions to contact him. It was not a judicial act to have a lunch date with Ms. Mott on May 30, 2012. It was not a judicial act to have sex repeatedly with Ms. Mott, including in judicial chambers. It was not a judicial act to text Ms. Mott from the bench about his desire to "jerk off." It was not a judicial act to allow Ms. Mott to take up residence at his deceased mother's Ann Arbor home. It was not a judicial act to give Mott $6,000. It was not a judicial act when he and Ms. Mott secretly discussed using the threat of jail to "loosen [Plaintiff's] purse strings." It was not a judicial act to instruct Mott to keep their affair quiet while he presided over [the child support matter], lest Defendants find themselves in "deep shit[."].

(Doc. 18 at 21–22, Pl's. Resp. Br.).

Unfortunately for King, none of the acts he complains of involved McCree dealing with him; they involved McCree and Mott. King's § 1983 claims cannot, as a matter of law, be based on actions taken by McCree that did not directly involve King. Indeed, "[a] § 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort."

6

*Carmichael v. City of Cleveland*, 881 F. Supp. 2d 833, 844–45 (citing *Jaco v. Bloechle*, 739 F.2d 239, 241 (6th Cir. 1984); *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000)). Thus, "[n]o cause of action lies under § 1983 for collateral injuries allegedly suffered personally by another." *Id.* (citation omitted).

Further, even if King could state a § 1983 claim against McCree for the above acts, none of the specific acts involved McCree acting under "color of state law." To state a claim under § 1983, King must show that his alleged constitutional violations were committed by McCree while he was "acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). This requires McCree to have "exercised power 'possessed by virtue of state law and made possible only because [McCree] is clothed with the authority of state law.'" *Id.* at 49 (citations omitted). This is not the case here. McCree's relationship with Mott was personal. McCree's private pursuit of Mott was not "under color of state law" solely because of his status as a judge. He was not "acting in his official capacity or . . . exercising his [official] responsibilities pursuant to state law" when he pursued a personal relationship with Mott. *Id.* at 50 (citing *Parratt v. Taylor*, 451 U.S. 527, 535–36 (1981); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 157 n.5 (1978)). Although McCree was acting under color of state law when presiding over King's child support case, he was not similarly doing so in his personal relationship with Mott.

The facts alleged in the complaint state only three actions taken by McCree that directly involved King:

    1.    On May 21, 2012, McCree accepted King's guilty plea, designated a payment plan and approved a delayed sentence;

2. On August 16, 2012, McCree placed King on a tether because of his failure to abide by the payment plan; and

3. On September 18, 2012, McCree recused himself from King's case; the case was transferred to another judge.

These acts are judicial acts.

The Supreme Court has "made clear that whether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Mireles*, 502 U.S. at 12 (quoting *Stump*, 435 U.S. at 362) (internal quotation marks and citation omitted). In other words, courts "look to the particular act's relation to a general function normally performed by a judge." *Id.* at 13. Here, accepting a guilty plea, enforcing a payment plan, approving a delayed sentence, placing King on a tether for failure to abide by the payment plan, and transferring King's case to another judge are all acts relating to a general function normally performed by a judge. Indeed, "a judge who assigns a case, considers pretrial matters, and renders a decision acts well within his or her judicial capacity." *John v. Barron*, 897 F.2d 1387, 1392 (7th Cir. 1990).

That McCree's sexual relationship with Mott may have motivated him to act unfavorably towards King does not change the "nature" and "function" of his judicial actions. The motivations behind an action taken by a judge are irrelevant. *Barnes*, 105 F.3d at 1115 ("[T]he Supreme Court explicitly stated that '[a] judge will not be deprived of immunity because the action he took was . . . done maliciously. . . .'") (quoting *Stump*, 435 U.S. at 356). Because a judge's errors can be corrected on appeal, "judicial immunity applies even to judicial acts performed maliciously, corruptly, in bad faith, or in error." *Huffer v. Bogen*,

8

503 F. App'x 455, 458–59 (6th Cir. 2012) (citing *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004)).

King misplaces his reliance on a line of cases where judicial immunity was denied because a judge performed nonjudicial acts. *See Archie v. Lanier*, 95 F.3d 438 (6th Cir. 1996) (refusing to extend judicial immunity to a judge who stalked, harassed, sexually molested, and abused an employee, a prospective employee, and a litigant); *King v. Love*, 766 F.2d 962 (6th Cir. 1985) (reasoning that deliberately misleading a police officer, if true, was a non-judicial act); *Harper v. Merckle*, 638 F.2d 848 (5th Cir. 1981) (finding that judge was not protected by immunity for initiating proceedings against man who came to judge's chambers to drop off a child support payment to his ex-wife, who was the judge's employee); *Gregory v. Thompson*, 500 F.2d 59 (9th Cir. 1974) (holding that a judge's use of physical force to evict someone from the courtroom is not a judicial act); *Lopes v. Vanderwater*, 620 F.2d 1229 (7th Cir. 1980) (reasoning that judge who acted in a prosecutorial capacity not entitled to judicial immunity). In these cases, the judges were performing actions not normally performed by a judge. This is not the case here; McCree's actions in presiding over King's child support case were clear judicial actions.

The Court in no way endorses the conduct described in the complaint. The courtroom, however, is not the appropriate venue to remedy King's complaints because McCree is absolutely immune from a civil lawsuit arising out of his judicial actions.

**B. Conspiracy to Violate Fourteenth and Fifth Amendment Rights – §§ 1983, 1985 (Count II)**

In Count II of the complaint, King claims that McCree and Mott conspired to violate his Fourteenth and Fifth Amendment due process rights. King's claim is premised on §

9

1983 and § 1985. To the extent that King's conspiracy claim is brought under § 1983, McCree is entitled to absolute judicial immunity. To the extent that King's conspiracy claim is brought under § 1985, the complaint fails to state a claim as a matter of law.

### 1. McCree is Entitled to Absolute Judicial Immunity on § 1983 Claim

As explained above, McCree is entitled to absolute immunity because his acts were judicial acts. King's allegations that McCree conspired with Mott to deprive him of his due process rights does not change this result. *See Harvey v. Loftus*, 505 F. App'x 87, 90 (3rd Cir. 2012) ("Judicial immunity attaches even if the act was done in furtherance of a conspiracy.") (citing *Dennis v. Sparks*, 449 U.S. 24, 26–27 (1980)); *Holloway v. Walker*, 765 F.2d 517, 524 (5th Cir. 1985) ("[I]t is irrelevant that Walker is alleged to have performed those acts pursuant to a bribe or a conspiracy; they remain 'judicial acts.'"); *Ashelman v. Pope*, 793 F.2d 1072, 1077–78 (9th Cir. 1986) ("[A] conspiracy between judge and prosecutor to predetermine the outcome of a judicial proceeding, while clearly improper, nevertheless does not pierce the immunity extended to judges. . . ."); *Barron*, 897 F.2d at 1392 ("[J]udges, on mere allegations of conspiracy, could be hauled into court and made to defend their judicial acts, the precise result that judicial immunity was designed to avoid.") (citing *Ashelman*, 793 F.2d at 1077); *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994) ("Indeed, *Sparks* reaffirmed that judges enjoy absolute immunity from liability under § 1983–even when the judge allegedly conspires with private parties."). Accordingly, King fails to state a conspiracy claim against McCree under § 1983.[2]

---

[2] The § 1983 conspiracy claim proceeds against Mott. The Supreme Court has explained that a private party who is alleged to have conspired with a judge who is entitled to absolute immunity can still be liable for conspiracy under § 1983. *Dennis v. Sparks*, 449 U.S. 24, 28–29 (1980). The private actor is considered to be acting under

**2. King Fails to State a Conspiracy Claim Under § 1985**

Section 1985(3) states, in pertinent part,

> If two or more persons in any State . . . conspire . . . on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages. . . .

42 U.S.C. § 1985(3).

The Sixth Circuit has explained the necessary elements a plaintiff must establish to bring a conspiracy claim under § 1985(3):

> To establish a claim under 42 U.S.C. § 1985(3), a plaintiff must prove (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994). Plaintiff must also establish that the conspiracy was motivated by a class-based animus. *Id.* at 653.

*Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (1994).

To save his § 1985(3) claim from dismissal, King says that McCree and Mott's conspiracy to deprive him of his constitutional rights was based on his gender and status as a father. King's assertions are not plausible. Indeed, King's complaint fails to make the same conclusory allegation that his response brief makes. The complaint states that the conspiracy claim is based on "Mott conspir[ing] with Defendant McCree to violate Plaintiff's constitutional rights *so she would receive favorable rulings from the court in exchange for*

---

color of state law under § 1983. *Id.* at 27–28.

11

*having sex with Defendant McCree.*" (Doc. 1 at 10, Pl's. Compl. ¶ 59) (emphasis added). King has not alleged a plausible conspiracy claim that was motivated by a class-based animus. Thus, to the extent that Count II of the complaint is based on § 1985(3), it is dismissed.

### V. CONCLUSION

For the reasons stated above, McCree's motion to dismiss was granted. The complaint as it relates to McCree is DISMISSED. Insofar as Count II (conspiracy) is based on § 1983, it proceeds against Mott. However, King cannot proceed on his conspiracy theory under § 1985(3).

The case manager will schedule a status conference to chart the future course of the case as it relates to Mott.

SO ORDERED.

    S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: July 26, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, July 26, 2013, by electronic and/or ordinary mail.

    S/Sakne Chami
Case Manager, (313) 234-5160